**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0425n.06

No.  12-1295

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Apr 29, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KAHLIL LYTTLE, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| REDFORD POLICE OFFICER RILEY, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| REDFORD SUPERVISING POLICE | ) | |
| OFFICER JOHN DOE; TOWNSHIP OF | ) | |
| REDFORD, | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE:  MERRITT, MARTIN, and CLAY, Circuit Judges.

**MERRITT, Circuit Judge.**  Defendant Kevin Riley, a Township of Redford police officer,

appeals the district court's denial of qualified immunity and governmental immunity in this action

brought under 42 U.S.C. § 1983.  For the reasons set forth below, we **AFFIRM**.

**I. Facts**

The facts of this case are clearly in dispute, and the appeal is frivolous.  Both the magistrate

judge and the district court are in agreement that Riley is not entitled to immunity.  The parties give

almost completely contradictory versions of the events that led to the tasering and arrest of plaintiff

Kahlil Lyttle at his home. Although Riley claims in his brief that he accepts plaintiff's version of the facts for purposes of this appeal, he goes on to dispute nearly every factual statement put forth by plaintiff. No audio or video of the encounter exists. We will briefly recite several of the discrepancies. Shortly after midnight on May 19, 2009, Redford Township Police were sent to the residence of plaintiff and his then-girlfriend, Sarah Thomas. Redford Police had received a 911 call from a female at the residence stating that she was fighting with her boyfriend and then she hung up. Thomas later testified that she made the 911 call because she was concerned for the safety of plaintiff. Trial Tr. at 7-9, *People v. Lyttle*, 09-99770 OM (17th Dist. Ct. for the Cty. of Wayne [Mich.] Aug. 24, 2009).[1]

When police arrived, plaintiff and Thomas were standing on an enclosed porch at the front of the house. The evidence is in dispute as to whether officers standing on the sidewalk could see inside the enclosed porch where plaintiff and Thomas were standing. The police say they could see into the porch and they saw plaintiff pulling Thomas against her will towards the inside of the house from the porch. Plaintiff says they could not have seen anything because the blinds were drawn. In any event, plaintiff and Thomas both testified that Thomas went into the house willingly with plaintiff and that he did not force or threaten her. Trial Tr. at 13, 35-36. The police said they wanted to talk to Thomas to make sure she was safe, so Thomas went outside and plaintiff went into the house. Even though Thomas was in police custody, the police subsequently tried to force their way

---

[1]Thomas testified at Lyttle's criminal trial for domestic assault and battery and obstructing and resisting a police officer arising out of the events that gave rise to this civil suit. Citations to the transcript of this trial will be referred to as "Trial Tr.".

into the house because they say that plaintiff refused to open the door. The police report of the incident says that the police wanted to get into the house because they feared for the safety of others in the house. The report, however, says that Thomas told them no one else was in the house. *See* Redford Police Department Report at 1; Cracchiolo Case Supplemental Report at 1. The police claim that as they were forcing open the front door, plaintiff fled out the back door. Defendant Riley was stationed at the back of the house. He claims that plaintiff came out the back of the house with his hands in his pockets and ignored Riley's command to remove his hands from his pockets and lay down. Riley then tasered plaintiff and he fell to the ground. Riley Case Supplemental Police Report; Riley Aff. at ¶¶ 8-10. In contrast, plaintiff testified that he tried to unlock the door when the police started breaking it down, but he could not open it because it became jammed when the police started kicking it. Plaintiff claims he told the police through a window that he would come outside through the back door. Plaintiff testified that he came out the back door shirtless and with his hands in the air to show he was unarmed. Plaintiff agrees that Riley told him to get on the ground, but plaintiff says that Riley tasered him before he could comply. Plaintiff says he was then tasered a second time by Riley and did not fall to the ground until Riley tasered him a third time. Plaintiff says he lost consciousness after the third taser and seriously injured his back and neck when he hit the ground. Lyttle Dep. at 20-30.

Plaintiff was charged with domestic assault and battery, as well as resisting and obstructing police. He was bound over for trial and subsequently acquitted of all charges. He then filed the complaint below, asserting claims of excessive force, false arrest and false imprisonment under Section 1983, and malicious prosecution, assault and battery, intentional infliction of emotional

distress and gross negligence under state law. He also brought a claim of municipal liability against

Redford Township for failure to train its police officers. The district court denied Riley's motion

for summary judgment on plaintiff's claims of excessive force, false arrest and false imprisonment,[2]

and it also denied qualified and governmental immunity to Riley. Riley filed this interlocutory

appeal, contending that the district court erred in denying him qualified immunity and governmental

immunity on the facts alleged by plaintiff.

## II. Analysis

The doctrine of qualified immunity protects government officials from liability when "their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (citations omitted). We

cannot grant qualified immunity to Riley because disputed issues of material fact preclude a

determination of whether a constitutional violation occurred.

Riley seeks qualified immunity from plaintiff's false arrest and false imprisonment claims

under Section 1983 and governmental immunity under Michigan law. Riley contends that he had

probable cause to arrest plaintiff for (1) resisting arrest because plaintiff did not surrender peacefully,

and (2) domestic assault and battery because plaintiff was observed by police to grab his girlfriend's

hand in an "aggressive" manner. However, plaintiff disputes those these assertions. As to the

obstructing and resisting charge, plaintiff testified that he surrendered peacefully by coming out of

the house with his hands in the air and that Riley tasered him before he had a chance to comply with

---

[2]Plaintiff's malicious prosecution and gross negligence claims, as well as the municipal liability claim against the Township of Redford, are not at issue in this appeal.

the command to lay down. As for the domestic violence charge, plaintiff and Thomas testified that plaintiff did not touch Thomas in an aggressive or forceful manner. Plaintiff and Thomas also both provided testimony that officers could not have seen into the enclosed porch in any event because the blinds were closed. Riley argues that the district court's analysis erroneously failed to take the officer's point of view into account. While the officer's perspective is relevant, if a jury were to believe plaintiff's version of the facts, even taking into consideration Riley's point of view, there would have been no probable cause to arrest plaintiff, making a grant of qualified immunity inappropriate at this stage.

Riley also seeks qualified immunity as to plaintiff's excessive force claim. As with the false arrest claim, if a jury were to believe plaintiff's version of the facts, even taking into consideration Riley's perspective, there would have been no reason to taser plaintiff, and therefore no qualified immunity for Riley, because plaintiff says he emerged from the house with his hands raised in the air and peacefully surrendered to the police. Riley points to several cases in this circuit and others that he argues support his claim for qualified immunity for use of the taser. However, in each of the cases, there was some additional evidence that supported use of the taser, such as the suspect struggling with police, evading arrest or attempting to flee or putting others in danger. *See Pleasant v. Zamieski*, 895 F.2d 272, 276 (6th Cir. 1990) (In determining reasonableness, the court should look at "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Under plaintiff's version of the facts, none of those circumstances were present here and the cases are distinguishable.

5

Riley contends that the district court erred in not granting him summary judgment on plaintiff's surviving state law claims (assault and battery and intentional infliction of emotional distress) on the ground of governmental immunity. To establish governmental immunity, a defendant must show that (1) the acts were undertaken during the course of employment while the employee was acting, or reasonably believed that he was acting, within the scope of his authority; (2) the acts were undertaken in good faith or in the absence of malice; and (3) the acts were discretionary as opposed to ministerial. *Odom v. Wayne Cty.*, 482 Mich. 459, 760 N.W.2d 217 (2008). Whether a tortfeasor acted in good faith is a question of fact generally left to the jury. A jury could find that Riley acted in bad faith if he tasered a cooperative, unarmed man trying to surrender. As with the other claims, Riley relies on facts that are in dispute and if a jury were to believe plaintiff's version, Riley would not be entitled to governmental immunity for his intentional tort state law claims.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.